HUGHES et al. v. HUGHES et al.   (No. 95.)

(Court of Civil Appeals of Texas.   Beaumont. Nov. 20, 1916.   On Motion for Rehearing, Dec. 21, 1916.)

1. APPEAL AND ERROR 🗝1001(1)—REVIEW— FINDINGS.

A verdict based on sufficient evidence is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3928–3933; Dec. Dig. 🗝 1001(1).]

2. FRAUDULENT CONVEYANCES 🗝299(1) — EVIDENCE—SUFFICIENCY.

In trespass to try title, evidence *held* to support a finding that a prior conveyance of land was made for the purpose of defrauding, hindering, and delaying creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 876; Dec. Dig. 🗝 299(1).]

3. FRAUDULENT CONVEYANCES 🗝174(1) — TITLE TO GRANTEE.

Where land has been conveyed in fraud of creditors, the title of the grantor passes to the fraudulent grantee, subject only to the right of the defrauded creditors to have the conveyance set aside; as the court is not supposed to grapple with moral propositions.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 530, 542; Dec. Dig. 🗝174(1).]

Appeal from District Court, Newton County; A. E. Davis, Judge.

Action by Isabella Hughes and another against T. M. Hughes and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

V. A. Collins, of Beaumont, for appellants. Wightman & Hancock, of Newton, for appellees.

BROOKE, J.   Isabella Hughes, joined by her husband, F. P. Hughes, acting, as she claimed, as the administratrix of the estate of J. R. West, deceased, and in her individual capacity, brought this suit against T. M. Hughes to recover on three promissory notes executed by said T. M. Hughes on July 4, 1910, and payable to the order of J. R. West 6, 12, and 18 months after date.

The notes were vendor's lien notes aggregating the sum of $9,330, reserving a lien on a large amount of land conveyed to T. M. Hughes by J. R. West on July 4, 1910.

J. R. West died on the 11th day of June, 1911, before any part of said notes had been paid, leaving surviving him his wife, Isabella West, now Isabella Hughes, and three children, Emmett West, Riley West, and Sam West, all minors, now residing with their mother, Mrs. Isabella Hughes. The deed from J. R. West to T. M. Hughes of date July 4, 1910, recited a cash consideration paid by said Hughes to the said West of $1,000, and the three notes above described and sued upon in this suit. After the death of J. R. West, T. M. Hughes sold a portion of the land conveyed to him by J. R. West to G. A. Baker, and a portion to E. O. Terry, or more properly, as shown by the evidence, it was sold by F. P. Hughes, who had previously married Mrs. West, but T. M. Hughes executed the deeds, and the money for same was paid over to F. P. Hughes. On the 29th day of October, 1912, T. M. Hughes executed a deed to S. A. Stark, conveying to said Stark the residue of the land described in the deed from said J. R. West to him. On October 29, 1912, said S. A. Stark executed a deed passing the same land conveyed to him by T. M. Hughes on to F. P. Hughes.

The other defendants herein claim portions of the land by deed from F. P. Hughes subsequent to October 29, 1912. All of the defendants answered save and except T. M. Hughes. The minor children of Isabella Hughes intervened in the suit, and the court, having allowed the intervention, appointed Thos. H. Casey, an attorney at law, guardian for the said minors. The plaintiffs and interveners made common cause against the defendants. The principal defense plead was that the transaction between J. R. West and T. M. Hughes was a fraudulent transaction made for the purpose of putting the property of said West out of reach of his creditors, that the said West was on the bond of the county depositary, which had failed, being largely indebted to Newton county, and that said West was trying to put his property beyond the reach of Newton county, and said notes were fraudulent, a

subterfuge, and never intended by the parties to same to be paid. Plaintiffs replied to the answer by supplemental petition and trial amendment, in which they plead trespass to try title to the land against which said notes were a lien, and prayed for the recovery of the land, if there was any reason why said notes should not be paid. It developed that defendants were claiming under a release from Mrs. Isabella Hughes, and also under deed from Isabella Hughes and her husband, F. P. Hughes. By further trial amendment appellants set up the invalidity of such release and deeds, that Mrs. Hughes, being a married woman, never acknowledged said release and deeds as required by law, and that at the date of the deeds from F. P. Hughes under which appellees claimed said F. P. Hughes was a minor, and that he had just reached his majority, and elected to repudiate and disaffirm the deeds, and that he had no part of the consideration he received from said deeds, and was therefore unable to restore same.

The case was submitted on special issues, and the jury found that the deed from J. R. West to T. M. Hughes, of date July 4, 1910, was made for the purpose of defrauding, hindering, and delaying creditors of said J. R. West, and that said notes were not to be paid by Hughes, and that such was the understanding between West and Hughes.

It will, perhaps, at the outset, be well to set out the charge of the court in full, viz.:

"In this case the court submits to you certain questions to be answered by you, and which questions when so answered by you will form the basis on which the court will render judgment herein. The burden of proof rests upon the plaintiffs to show by a preponderance of the testimony the material allegations in their petition; and the burden of proof rests upon the defendants to show by a preponderance of the testimony that the deed made by J. R. West to T. M. Hughes on July 4, 1910, was a fraudulent conveyance.

"Question No. 1: Do you believe from the evidence in this case that the conveyance made and executed by J. R. West conveying the property in controversy to T. M. Hughes, dated July 4, 1910, was made, executed, and delivered for the purpose of defrauding, hindering, and delaying any creditor of the said J. R. West? You will answer this question 'Yes' or 'No' as you may determine the fact to be. To which question the jury answered 'Yes.'

"Question No. 2: Do you believe from the evidence in this case that J. R. West, at the time of the execution and delivery of said deed, intended to place his property beyond the reach of his creditors? You will answer this question 'Yes' or 'No' as you may determine the fact to be. To which question the jury answered 'Yes.'

"Question No. 3: Do you believe from the evidence in this case that at the time of the execution of said deed, on July 4, 1910, that T. M. Hughes knew when he received said deed that J. R. West was conveying said land recited in said deed for the purpose of placing his property beyond the reach of his creditors? You will answer this question 'Yes' or 'No' as you may determine the fact to be. To which question the jury answered 'Yes.'

"Question No. 4: Do you believe from the evidence in this case that J. R. West and T. M.

Hughes intended, at the time of the execution of said notes, that T. M. Hughes was merely to hold the land conveyed to him for the purpose of assisting the said J. R. West in placing the property of J. R. West beyond the reach of his creditors, and that the notes given by T. M. Hughes to J. R. West were never to be paid? You will answer this question 'Yes' or 'No' as you may determine the fact to be. To which question the jury answered 'Yes.'"

Also the following instruction was given:

"Question No. 5: Did G. A. Baker know at the date of the deed from T. M. Hughes to him in evidence in this case and before he paid the money which was paid to him for said deed, that T. M. Hughes was conveying property to apply the proceeds thereof on the notes held by the estate of J. R. West, deceased. Answer 'Yes' or 'No' as you find the fact to be. To which question the jury answered 'No.'

"Question No. 6: Did E. O. Terry know at the time of the deed from T. M. Hughes to him in evidence in this case and before he paid the money for said deed that T. M. Hughes was conveying property to apply the proceeds thereof on the notes held by the estate of J. R. West, deceased? Answer 'Yes' or 'No' as you find the fact to be. To which question the jury answered 'No.'

"Question No. 7: In the conveyance from T. M. Hughes to S. A. Stark, and from said Stark to F. P. Hughes, was it understood and intended by each of the parties thereto to put the title of the land in controversy in this suit into F. P. Hughes in trust for the estate of J. R. West, deceased? Answer 'Yes' or 'No' as you find the fact to be. To which question the jury answered 'Yes.'"

The court also instructed the jury that, in addition to the verdict herein, as requested by the court on special issues, they should return a verdict for the defendant S. A. Stark as to the cross-action of the defendants against said Stark on the alleged warranty, and stated the form of the verdict, which verdict on said issue was duly signed by the foreman of the jury.

[1] By the first assignment of error the action of the court is challenged in refusing to give special charge No. 1 of appellants, which was an instruction to find for the plaintiffs foreclosing the lien, upon the ground that the testimony showed that J. R. West intended to convey to T. M. Hughes the title to the land by deed of July 4, 1910, and that T. M. Hughes executed the notes in good faith, fully intending to pay the same.

We have examined the record, and, the jury having passed upon the identical question, and there being evidence to support their verdict, the first assignment is in all things overruled.

In the second assignment complaint is made of the failure of the court to instruct the jury to find for the plaintiff for the amount of the notes and foreclosing the lien on the following grounds:

"Where one party intends to sell a piece of land and another party intends to buy, both parties acting in good faith with each other, intending the transaction to stand, only creditors of the seller or sellers, or subsequent purchasers for value without notice, can be heard to say that the transaction was other than was intended by the contracting parties, and such transaction is not tainted with such fraud as would keep a court of equity from enforcing it," etc.

The jury found against the contention of appellants, found that the transaction between West and Hughes was not in good faith, and we cannot say that there is not evidence to support their finding. Therefore the assignment is overruled.

By the third assignment of error complaint is made that, while the burden of showing by a preponderance of the evidence the transaction between J. R. West and T. M. Hughes was fraudulent, the appellee failed to show by a preponderance of the evidence that said transaction was fraudulent.

As stated above, this matter was submitted to the jury, and they have found against the contention of appellants, and we cannot say but that there is evidence on which to base their verdict. Therefore this assignment is overruled.

Appellants concede in their brief that, if the evidence raised this issue, that this finding would probably preclude a recovery on the notes. The evidence is not, perhaps, as cogent to our minds as it might have been, but there is evidence in this record showing and strongly tending to show, taking into consideration all the facts surrounding the transaction, that it was a fraudulent transaction, and that it was intended to defraud the creditors of said West. T. T. Howard testified:

"He [meaning West] told me that he had sold the property. As to whether or not he told me that he got the cash, will say I said: 'Did you get the money for it? If you did you are lucky.' And he said 'I got some, I got the balance in vendor's lien notes, and I can put them where they can't get them.'"

[2] There was evidence that we deem sufficient to support this finding, and, as above said, this assignment is overruled.

Complaint is made by the fourth assignment that the undisputed evidence in the case shows that T. M. Hughes conveyed the land described in the deed from J. R. West to him, to S. A. Stark, to be conveyed to F. P. Hughes in trust for the estate of J. R. West, deceased, and that said Stark so conveyed it to the F. P. Hughes, in trust for said estate, and that defendants and each of them bought from F. P. Hughes with the full knowledge that F. P. Hughes was holding it in trust for the said estate, and having full knowledge of the beneficial ownership of said property. The court should have charged the jury to find for the plaintiffs for the land sued for.

The verdict of the jury was against the contention of appellants, and we cannot say that the testimony is not sufficient to support the same. We have carefully considered this assignment in the light of the record, and, finding no merit in the same, it is overruled.

It is claimed by the fifth assignment of error that the court erred in submitting to the jury question No. 4 in its charge, because, it is contended, if the transaction between J. R. West and T. M. Hughes was fraudulent and for the purpose of hindering or delaying cred-itors in the collection of debts, only creditors or subsequent purchasers for value without notice could call it in question, and, the defendants not being in either class, the issue was improperly submitted.

[3] The jury has decided that the deed from West to T. M. Hughes was a sham, and not a sale, and therefore, as stated by appellant in his brief, the court will leave the parties where they put themselves; will neither assist West in collecting the notes nor in recovering the land back. When property has been conveyed in defraud of creditors, all the title of the grantor passes to his fraudulent grantee, subject only to the right of the defrauded creditors to have the conveyance set aside, so far as the deed is concerned, and the property made liable for its payment. As to subsequent creditors, the title of the grantee is good, and the fraudulent grantor has no right in it whatever. He has no title which can descend to his heirs, or vest in his executor or administrator for the payment of his debts, as none but prior creditors have any claim against the property, and the estate has no title to it. These creditors are the only parties who can sue to subject it to their debts. Willis & Bro. v. Smith, 65 Tex. 658.

There is no merit in this assignment, and it is therefore overruled.

The sixth assignment is as follows:

"The undisputed evidence in this case showing that the only title the defendants had was from and under plaintiffs Isabella Hughes and F. P. Hughes, and at the date of the deeds from said plaintiffs F. P. Hughes was a minor, and that Isabella Hughes was a married woman, and that immediately after reaching his majority F. P. Hughes disaffirmed his deeds to defendants, and further showing that the said Isabella Hughes was not privily examined by the officer in taking her acknowledgment to any of said deeds, but that she acknowledged same over the phone, the court erred to the prejudice of plaintiffs and interveners in refusing and overruling the motion of plaintiffs and interveners for judgment on the verdict for the land sued for in the action in trespass to try title, as more fully appears from their bill of exception No. 6 filed in this cause."

It appears that the deeds upon their face purport to have been acknowledged as requested by law, both the single acknowledgment of the husband and the separate acknowledgment of the married woman, and it is not shown that any of the appellees to whom the deeds were made had any knowledge or anything to put them upon notice that the acknowledgments were not legal and, regular in all ways; that there was any defect, and it being undisputed that F. P. Hughes was the husband of Isabella Hughes, it is necessary that he should join in the acknowledgment.

Isabella Hughes, for herself as administratrix of the estate of J. R. West, deceased, pleaded the minority of F. P. Hughes as to said conveyances, and that he was unable to restore the purchase price of the property. F. P. Hughes himself did not plead his mi-

nority, nor has he asked the return of the property. The record is silent as to any evidence whether F. P. Hughes was able to return the purchase price received by him for the tracts conveyed by him. The evidence shows that certain of the property was purchased by defendant from T. M. Hughes; that the property known as the "restaurant property" was bought under execution against F. P. Hughes, and nothing is shown or indicated that minority was pleaded in the case in which the judgment was rendered out of which the execution issued. The deeds executed by Mrs. Isabella Hughes were introduced in evidence without objection from appellants, and, as above stated, contained the certificate of the notary, John B. Forse, that she did appear before him. This assignment is overruled.

The seventh assignment is as follows:

"Even though the transaction between J. R. West and T. M. Hughes were so tainted with fraud as to make said notes noncollectible and to put an indefeasible title to said land in T. M. Hughes, yet, if he, the said T. M. Hughes, acknowledged the right and title to said land to be in the estate of J. R. West and acknowledged himself holding for said estate, any purchasers from T. M. Hughes with knowledge of his trusteeship and with knowledge of the beneficial ownership of said land acquired no title to said land, and the deed from T. M. Hughes to E. O. Terry of date August 8, 1912, and from T. M. Hughes to G. A. Baker, of date September 12, 1912, passed no title to the said Terry and the said Baker."

The direct proposition was put before the jury, and they were asked in so many words whether E. O. Terry and G. A. Baker had any knowledge of the trusteeship or any knowledge of the beneficial ownership of said land in T. M. Hughes or not. The jury has passed upon this question, and we see no reason to disturb their verdict on this issue. The assignment is therefore overruled.

The eighth assignment of error is as follows:

"If by reason of the fraud in the transaction between J. R. West and T. M. Hughes, of date July 4, 1910, an indefeasible title to said land was in T. M. Hughes, but he exercised the option to treat himself as the trustee of J. R. West, or after his death, of his estate, purchasers from or under him with knowledge of such fact acquired no title by such purchase, and, the undisputed evidence showing that the said T. M. Hughes acknowledged the title to said land to be in the estate of J. R. West after he failed to pay off the said notes, the court erred to the prejudice of plaintiffs and interveners in not rendering judgment for plaintiffs and interveners on their action in trespass to try title."

We are not supposed to grapple with moral propositions in this court, so far as what is or is not the moral duty of any man. The jury has said this was a fraudulent transaction. This court will not lend its assistance to and interfere in the matter, but will leave the parties where it found them. We believe that the real issues of the case were submitted to the jury, and that they were, in the light of surrounding circumstances, considered by the jury, and the jury verdict was warranted.

We believe that the appellants have had a fair and impartial trial, and we are not disposed to disturb this verdict. So believing, the remaining assignment is overruled, and the judgment of the lower court is in all things affirmed.

It is so ordered.

### On Motion for Rehearing.

It is strenuously urged that our finding under the "fourth assignment of error" that the jury had determined that the purchasers of the land had no knowledge of the alleged fact that F. P. Hughes was holding only as trustee for the estate of J. R. West, deceased, was error. This criticism of the action of the court is just, and we were in error in concluding that the jury so found.

The facts show that the purchasers from F. P. Hughes had notice that the said F. P. Hughes did not pay any consideration for the transfer from T. M. Hughes. However, we are of the opinion that this does not alter the conclusion arrived at in the disposition of this cause.

We have again gone over carefully the record, and believe that the disposition of said cause is correct; therefore the motion for rehearing is in all things overruled.